## J. P. SIMON ET AL. v. W. D. STEARNS.

Delivered October 28, 1897.

1. **Trespass to Try Title—Pleading—Petition.**

    In trespass to try title, where the petition contains all the statutory allegations, it is not subject to exception.

2. **Evidence—Action for School Land—Application to Purchase.**

    An application by plaintiff for the purchase of a part of a section of school land is admissible in evidence in an action to recover such land, where it is the basis of his title.

3. **Same—Same—Same.**

    In an action to recover the east half of a section of school land, an application by plaintiff for the purchase of the west half of such section, upon which he had settled, is admissible to show his right to such west half, and his right resulting therefrom to purchase the east half.

4. **School Land—Application to Purchase— Abandonment.**

    An application for the purchase of school land under which the applicant acquires the superior right to purchase such land, is not available to him as against a subsequent applicant, where he voluntarily abandons his application before perfecting his right thereunder by paying for the land.

5. **Deed—"Right, Title, and Interest"—Warranty—Construction.**

    A deed conveying the grantor's right, title, and interest in land, with a warranty that neither "I, nor my heirs, nor any person claiming under me, shall at any time claim any right or title therein," does not give the grantee any right under a title subsequently acquired by the grantor.

**6. School Land—Settlement—Right to Purchase.**

A settlement upon any part of a section of school land entitles the settler to purchase all or any part of the section.

**7. Same—Same—Death of Applicant—Extension of Time to Heirs.**

The provision of the statute allowing the children of an applicant for school land, who has settled thereon, one year's time in which to pay for the land after the applicant's death, is not brought into play by the death of the wife of such applicant.

Appeal from Jefferson  Tried below before Hon. Stephen P. West.

*Tom J. Russell* and *James H. Rachford*, for appellants.

No brief for appellee reached the Reporter.

WILLIAMS, Associate Justice.—Appellee Stearns brought this suit to recover of J. P. Simon and his two minor children, Fred and Hattie Simon, the east half of section No. 4, surveyed for the school fund by the Houston, Taylor & Bastrop Railway Company, by virtue of certificate No. 5-279,  The petition contained only the allegations required by statute in an action of trespass to try title.  Appellant Thomas J. Russell was appointed by the court guardian ad litem for the minor defendants. The defendants answered jointly, seeking judgment against plaintiff, not only for the east half of section 4, but for the whole of it, and setting up their claims as they will appear further on.  Judgment was rendered for plaintiff for the east half of the section, and all of the defendants gave notice of appeal, but J. P. Simon failed to properly perfect his appeal, and the cause is before us upon the appeal of the guardian ad litem for the minors.

The titles of the parties will be best understood if stated in the order of time in which the facts out of which they grew transpired.  On the 6th day of March, 1894, J. P. Simon was the head of a family, consisting of wife and children.  He then became an actual settler with his family on section No. 4, locating his improvements on the eastern portion thereof.  On March 12, 1894, his application to purchase the section, accompanied by one-fortieth of the purchase money, required as the cash payment, was filed in the Land Office.  His application was rejected by the Commissioner, for the reason stated, that the land had already been sold to Wynne and Bordages, who had transferred their claim to Stearns, as shown by the transfer in his office.  An abstract from the entry in the Land Office also shows that Stearns had made application for the purchase of the section March 3, 1894, but the papers relating to this claim of Wynne and Bordages and that of Stearns are not in evidence, and it is not further explained.  There was no settlement on the land prior to that of Simon.

The Commissioner, upon rejecting Simon's application, returned him the cash payment, which was received and kept by Simon, and no further effort was made by him to perfect this claim.  He remained upon the land, however, and there being a dispute about it between him and

Stearns, they made a compromise in the summer of 1894, and exchanged deeds, the substance of which is thus stated in the record:

The deed from plaintiff and his wife bears date July 23, 1894, and was properly acknowledged the same day, and expresses a consideration of $52, and a further consideration of a compromise of the controversy theretofore between plaintiff and defendant J. P. Simon as to said section No. 4. The conveying clause in said deed is to defendant Jacob P. Simon, as follows: "Do by these presents bargain, sell, release, and forever quitclaim unto the said Jacob P. Simon, and unto his heirs and assigns, all my right, title, and interest in and to" the east half of said section No. 4.

The warranty clause is as follows: "So that I, the said Wilfred D. Stearns, nor my heirs, nor any person or persons claiming under me, shall at any time hereafter have, claim, or demand any right or title to the aforesaid premises or appurtenances, or any part thereof."

The deed from Jacob P. Simon and wife to plaintiff bears date July 23, 1894, is properly acknowledged for record; expressed the consideration to be a compromise of the controversy theretofore existing between plaintiff and Simon relative to said section No. 4, is similar in its terms to the one from plaintiff to defendant, and conveys to plaintiff the west half of said section No. 4.

After these deeds were exchanged, Stearns, during 1894, built a fence from the northern to the southern line of the section, intended to divide it equally, but which by mistake was put about sixty feet upon the east half at the south side. Stearns also caused a house to be built on the west half in 1894, and his family occupied it a while, but did not settle there permanently until later, as stated below.

On October 20, 1894, Simon made out an application for the purchase of the east half of the section, which was filed in the Land Office December 11, 1894. It was complete in all respects, except that the money required for the cash payment did not accompany it. On December 13, 1894, the Commissioner, by letter, notified Simon of the receipt of his application, stating, which was true, that the Treasurer had been notified to accept first payment on same of $16.06, which amount must be sent to the State Treasurer, if not already sent, before award can be made.

On or about April 20, 1895, Stearns with his family settled permanently in his improvement on the west half of the section, and has since resided there. About April 25, 1895, he presented to the Commissioner an application to purchase the east half of the section, and the east half of the west half of the same. He had sold the west half of the west half to another person. The Commissioner rejected these applications, informing Stearns that separate applications must be made for the parcels.

On the 27th day of April, 1895, Stearns filed two separate applications, in compliance with the ruling of the Commissioner, complying in all respects with the requirements of the statute for the purchase of such lands. On May 2, 1895, the State Treasurer notified the Commissioner that Simon had not forwarded the money for the cash payment upon the

east half of the section, and on the same day the Commissioner wrote Simon that his application was rejected, because of such nonpayment. On May 4, 1895, the Commissioner notified Stearns that the east half of the section was awarded to him upon his application. The indorsement of the award upon the papers bears date May 7, 1894.

On May 17, 1895, the Commissioner received from Simon the money for his cash payment. It was forwarded by the Commissioner to the State Treasurer, with instructions to return it, as the application had been rejected. This was done by the Treasurer on June 6, 1895, and on June 12, 1895, the money was returned to the Treasurer by Simon with the request that it be kept on deposit until withdrawn by him, as he had statements and affidavits to file with the Commissioner which would cause him to cancel the award to Stearns.

Since their first settlements on the land, both parties have continued to reside there, and Stearns has made all payments and complied with all requirements of the law.

The first assignment of error complains of the ruling of the court in refusing to sustain the exception to the petition. The petition contained all the necessary allegations for the action of trespass to try title, and it was therefore not subject to exception.

The point which appellant seeks to make, that the proof of title was not sufficient to authorize the recovery, could only arise after the evidence was developed, and the real question is whether or not the plaintiff's evidence supports his allegation. If the title he shows was sufficient to entitle him to possession, as against defendant, it was sufficient to sustain the action as brought. If he had complied with the laws regulating the purchase of school land, this entitled him to possession against every one, unless some prior right was shown. This question, therefore, necessarily depends upon the decision of the main issue in the case, as to whose claim to the land is the superior one.

The court did not err in admitting in evidence the several applications made by plaintiff for the purchase of the land. His application for the purchase of the east half of the section was the basis of his title, and was therefore admissible. His application for the purchase of the other land was admissible to show his right to that portion of the section upon which he had settled, and his consequent right to purchase the portion in controversy. The application in which he sought to purchase both tracts, simply aided in the development of the transaction, and, whether necessary or not, was harmless to the defendant.

It may be admitted that, by his application of March, 1894, Simon acquired the right to purchase the land, superior to any other claim; but the uncontroverted evidence in the case shows clearly that he did not perfect his right under that application, but voluntarily abandoned it. When the money was returned to him, he accepted and kept it. He subsequently relinquished his prior claim to the west half to Stearns, and still later he filed another application for the east half. At the time he filed such application for the east half, he had the right to purchase it

by complying with the law, and this right was recognized by the Commissioner, and full opportunity was given him for its exercise; but he could only mature his application into a right to the land by payment of the money required by the statutes to be deposited. He failed to make this payment, and his application was finally rejected because of such noncompliance. Although he had made application to purchase the land, inasmuch as he failed to do one of the things required by law to perfect his right, the land remained a part of the unsold school land of the State, subject to be sold to any one who would make application in accordance with the law. The plaintiff made such an application while the land was subject to be sold, and did everything which the law required of one desiring to purchase the school land.

As the right of the State to sell the land remained in full force, it is evident that the right to it was acquired by Stearns when his application was accepted, unless he was in an attitude which precluded him from purchasing. If he was precluded from purchasing, it was by force of the compromise which had been made between him and Simon, and of the deeds exchanged between them. These deeds show on their faces that each party was asserting a claim to the section, and that their purpose was to compromise and adjust the claims which they then asserted. The granting clause of the deed of plaintiff to Simon in terms conveys only his right, title, and interest to the east half of the section. The warranty clause, in view of the language of the granting clause, and the recital in the deed of the purpose for which it was made, should, in our opinion, be held to operate only upon the subject of the conveyance, that is, the claim which Stearns then had, and to bind him and his heirs not to assert such claim thereafter. It is obvious that there was no purpose on the part of either of these persons to convey to the other a new title to any part of the land, and that neither undertook to assure the other against anything but the subsequent assertion of claims theretofore existing. Such being the case, it can not be held that a title afterwards acquired by one would pass by estoppel to the other.

Nor is the case like those sometimes found in our reports, in which one party has assumed the duty to acquire the title from the State for the other. Stearns did not assume any such duty by this contract. At the time this compromise was made, as far as this record shows, the title to the whole section, and a perfect right to sell it to anyone, remained in the State. By the compromise, each party freed himself from the claim previously asserted by the other, but the land remained open to purchase, and either, in order to acquire the right, was bound thereafter to do the acts which the law required in order to entitle him to a purchase. We can not see that, if either failed to do this, their settlement of a prior controversy precluded the other from doing so.

It is urged that, as Stearns was not an actual settler upon the east half of the section, he was not, at the time he made his application, entitled to purchase it; but we think that the Commissioner of the General Land

Office correctly ruled that his settlement upon the section entitled him to purchase all or any part of it.

It is further alleged that, inasmuch as Mrs. Simon died in September, 1894, the statute allowed her children one year's time in which to make payment for the land. Such provision, where a purchaser dies, is made in behalf of his heirs; but Mrs. Simon was never a purchaser. The only person who made the application was Simon, and Mrs. Simon's death could not affect the proceedings by which he was to complete his purchase.

The judgment of the District Court is correct, and is affirmed.

*Affirmed.*

Writ of error refused.